Casey, Ch. J.,
delivered the opinion of the court:
1. At and before the commencement of the war Of the rebellion, the claimants were resident at Nashville, Tennessee, and engaged in the wholesale dry goods trade.
In the latter end of 1861, and beginning of 1862, they had sundry debts due them from merchants residing in Alabama, for goods sold to such merchants. At this time Searight, one of the firm, went there to collect these moneys. Having collected a considerable sum in Confederate funds and southern bank notes, he, in February, 1862, deposited it with McAlister, Simpson & Co., merchants and factors, of Florence, Alabama, with directions to remit these funds to New Orleans, and have them there invested in sugar, for account of Furman & Co. McAlister, Simpson & Co., in accordance with these instructions, remitted the funds to Payne, Huntington & Co., of New Orleans, with orders to invest them in sugar, and store them at New Orleans, for Furman & Co. In pursuance of these orders, Payne, Huntington & Co. purchased for account of Furman & Co. 100 hogsheads of sugar, and stored it at Wood’s cotton-press in the city of New Orleans.
2. The exact date in February, 1862, when Searight deposited the money with McAlister, Simpson & Co. is not shown, Payne, Huntington & Co. acknowledge the receipt of the order to purchase on the 26th of February, and recite in their letter that the letter from McAlister, Simpson & Co. was dated the 21st February, 1862. And on the 6th March, 1862, they advise the latter again that they had made the purchase, in accordance with their former instructions, and had stored the sugars.
3. On the 24th February, 1862, the Union Army occupied Nashville, Tennessee, and it was thenceforth held by the Union forces during the war. The city of New Orleans was held by the insurgents from the commencement of the war until the last of April or beginning of May, 1862, when it was captured by the combined land and naval forces of the United States, under the command respectively of General Butler and Admiral *585 Farragut, and from that time it continued in the occupation and under the control of the United States forces.
4. Some time in the summer of 18G3, these sugars, which had been reduced from 100 hogsheads to 67 by shrinkage and refilling, were seized under military orders, and sold by Captain J. W. McClure, an assistant quartermaster of the United States Army, for the net sum of $10,421 71. These proceeds were duly accounted for in his accounts current as quartermaster, and have been regularly covered into the Treasury of the United States.
5. The evidence shows that the claimants were loyal men, and gave no voluntary aid or comfort to the rebellion or to persons engaged therein.
6. The special counsel of the United States objected to the competency of the evidence of the sale by Quartermaster McClure, contained in his letter to General Yincent, Assistant Adjutant General, of June 7,1866, and the inclosed original bill-of sale, after said McClure was no longer in the service of the United States, certified from the records and files of the War Department. The record contained other evidence of the actual and seizure sale, in July, 1863, of these sugars by Quartermaster McClure, and of the price received for them. So his account current settled at the Department for the month of July, 1863, Showed receipts from the sale of confiscated property, amounting to the sum of $29,986 52, without showing the specific lots of property, and what each was sold for.
The court hold that the letter of McClure of June 7, 1866, and the accompanying bill of sale, received and acted upon by the War Department in the adjustment of the accounts, and certified here, taken in connection with the other evidence in the cause, was competent to show what were the net proceeds of the property in question, and so overruled the objection to its competency.
The court also, hold, as a conclusion of law, that the facts stated did not involve any violation of the non-intercourse laws, and that the property of claimants was not subject to capture and forfeiture.
That upon all the facts stated the claimants are entitled to a judgment for the net proceeds of the sale of their property seized, amounting to the sum of $10,421 71, and for which judgment is to be entered in their favor.